4 F.3d 995
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Opal SON, Defendant-Appellant.
 No. 92-5241.
 United States Court of Appeals, Sixth Circuit.
 Aug. 23, 1993.
 
 Before: JONES and BATCHELDER, Circuit Judges and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-Appellant Opal Son (Opal) appeals her conviction for aiding and abetting in the manufacturing of approximately 2,600 marijuana plants in violation of 18 U.S.C. Sec. 2 and 21 U.S.C. Sec. 841(a)(1). On appeal, Opal contends that the district court made several erroneous evidentiary rulings, that the prosecutor made an improper comment during closing arguments, that the jury instructions as to the crime of aiding and abetting were deficient, and that there was insufficient evidence to support her conviction. A previous panel of this court affirmed the conviction of Opal's co-defendant Carroll Son (Carroll), her husband, and reversed the conviction of Opal's second co-defendant Susan Grace, her sister. United States v. Son, 991 F.2d 797 (6th Cir. March 31, 1993) (per curiam) (Son I ).
 
 
 2
 In the spring of 1990 the Kentucky State Police received information that marijuana was being grown in a remote area of Lyon County, Kentucky. On March 13th, Detective William Potter of the State Police surveyed the field. He observed various plant beds filled with marijuana plants, jugs containing blue liquid that he assumed to be a fertilizer, a chain saw, a rectangular plastic bucket, a tiller, and an empty bag that appeared to have contained humus. Potter saw no one in the vicinity of the patches at this time. Potter returned the next day and saw two individuals near the plant beds, but could not identify them or tell what they were doing. Later, following the arrest of the defendants, Potter testified that he recognized Carroll as one of the two persons near the marijuana. He specifically stated that Opal was not one of the individuals he observed.
 
 
 3
 On May 15th, members of a State Police Response Team (SRT) positioned themselves near the marijuana patches. At approximately 12:30 p.m., two vehicles approached the site. Susan Grace was driving a black Ford car and was accompanied by Opal. Carroll was driving a brown van. Earlier in the morning, the SRT members had observed the same brown van in the area. Both vehicles were parked in positions where it would be difficult to observe them from the road.
 
 
 4
 The defendants left the vehicles and were seen near the patches, but no witness testified that he was able to directly observe any defendant in the act of "manufacturing" marijuana. One witness testified that he observed Carroll carrying a bag of humus toward the plants.
 
 
 5
 The defendants were arrested in one of the marijuana patches. The search of Carroll's van disclosed items that could be used to cultivate marijuana. At trial the government produced evidence that the tiller which was found in the patches was the same make and model as a tiller that George Grace, Susan Grace's husband, had purchased. There was also a bucket at the patches that was similar to one found in the Grace home. George Grace's chain saw was in one of the patches as well. The defendants claimed that they were in the area to cut firewood.
 
 
 6
 In an indictment dated July 2, 1990, a federal grand jury in the Western District of Kentucky charged that Opal, Carroll, and Susan Grace "aided and abetted by each other, did knowingly and intentionally manufacture approximately 2,600 marijuana plants" in violation of 18 U.S.C. Sec. 2 and 21 U.S.C. Sec. 841(a)(1). The defendants were arraigned on July 13, 1990, at which time they pleaded not guilty. A jury trial began on December 2, 1991. The jury returned with a guilty verdict as to each defendant. On December 13, 1991, Opal filed a renewed motion for acquittal or, in the alternative, a motion for a new trial. The district court denied both motions. On February 4, 1992, each defendant was sentenced to 121 months imprisonment, a $3,000.00 fine, and five years supervised release following imprisonment. Opal filed a timely notice of appeal.
 
 
 7
 The appeals of the three defendants were originally consolidated by this court. However, Opal's appeal was subsequently severed from those of her co-defendants.
 
 
 8
 In his appeal, Carroll argued that the government produced no evidence at trial which indicated that he performed any act to manufacture marijuana. He was not observed cultivating or in possession of marijuana and he did not own the land on which the crop was found. Further, he alleged that the items seized from his van were all consistent with legal gardening; he had sixteen tomato plants and eight pepper plants in his van at the time of his arrest. He argued that his presence in the vicinity of the marijuana was the only link the government established between him and the illicit crop. The government responded that Carroll was seen in the marijuana patches on at least two separate occasions and that on May 14th he was observed watching some other person perform some sort of repetitive act near the plants. Further, the materials that he brought to the area indicated a large scale cultivation of some crop, not just a small garden. These materials consisted of two bags of humus, presumably to be used as fertilizer, and entire cases of deer and rabbit repellant, much more than would be required for a small garden. In addition, the police found a sprayer in the patches that matched one found in his van.
 
 
 9
 In her appeal, Susan Grace argued that there was absolutely nothing in the evidence upon which she could be convicted. The fact that she was walking around the field did not provide evidence that she was associated with a criminal act. Susan Grace had allowed Carroll to borrow her husband's chain saw, but this was consistent with her claim that she went to the area to get firewood. None of the marijuana had large enough stalks to require a chain saw for harvesting and there was evidence that trees had been cut in the area. Further, although the tiller found in the marijuana patch was similar to one that her husband had owned, she testified that her husband had sold the tiller sometime before May 1990. She produced a witness who testified that he indeed had sold the tiller for Susan Grace's husband. In addition, the government completely failed to identify the tiller in the marijuana patch, by serial number or otherwise, as one formerly owned by Susan Grace's husband. In respect to the plastic bucket found in the Grace residence that was similar to one found near the marijuana patch, Susan Grace produced evidence that buckets of this description were owned by large numbers of people in the area and were often sold at flea markets.
 
 
 10
 The government responded that Susan Grace parked her car in such a way as to conceal it from passing motorists and that she was observed conversing with Opal while looking at the plants. The government argued that Susan Grace associated herself with the illegal activity by accompanying the Sons to the patch and provided instrumentalities used in the cultivation of the crop. This refers to the tiller that was similar to the one previously purchased by George Grace and a plastic bucket like the one found in the Grace residence.
 
 
 11
 This court affirmed the conviction of Carroll, but reversed Susan Grace's conviction holding that there was insufficient evidence to support her conviction. Son, Nos. 92-5300/5203, 1993 WL 94047, at * 4-5, 1993 U.S.App. LEXIS 7585, at * 10-12.
 
 
 12
 Opal contends that there was insufficient evidence to support her conviction. We agree with Opal's argument.
 
 
 13
 In Son I we addressed this same issue as to Susan Grace:
 
 
 14
 After reviewing all the proof concerning Susan Grace, we conclude that the government failed to produce sufficient evidence that Ms. Grace associated herself with the marijuana activities and participated in them as something she desired to bring about or took any action to make the venture succeed. Morrow, 977 F.2d at 230. There was no evidence that she purchased seeds or planted them, that she ever worked in the patches, or that she was in the area on any other occasion than that time of her arrest. Although similarity of the tiller and bucket found in the area of the growing marijuana to those associated with her husband raised a suspicion that she had taken some action to further the marijuana-growing venture, the government failed completely to prove that the tiller found in the area was the same one owned by her husband and she produced testimony that her husband had sold that tiller some time previously. With respect to the plastic buckets, the only evidence concerning their availability and presence in the area was that they appear frequently at sales and flea markets and that many residents of the county own such buckets.
 
 
 15
 The evidence connected Carroll Son with the growing crop in concrete ways, but we believe that as to Susan Grace that this was a "mere presence" case, and that the jury convicted her on the basis of her presence and her relationship to Carroll Son's wife, who was her sister. This is not enough. We have held that mere presence at the scene of a crime, even when coupled with guilty knowledge, is not sufficient to support a conviction. Instead, the defendant must be shown to be " 'a participant rather than merely a knowing spectator' before [s]he can be convicted of aiding and abetting." United States v. Winston, 687 F.2d 832, 835 (6th Cir.1982) (quoting United States v. Bryant, 461 F.2d 912, 921 (6th Cir.1972).
 
 
 16
 Son, Nos. 92-5300/5303, 1993 WL 9407, at * 4, 1993 U.S.App. LEXIS 7585, at * 10-11.
 
 
 17
 The evidence against Opal is that on May 15th, the date of her arrest, she was observed walking to marijuana patch # 2. She looked around and then left. Later, Opal returned to patch # 2 with Susan Grace. While at this location, Carroll arrived carrying a chain saw. The three defendants then went to marijuana patch # 3 where they were arrested.
 
 
 18
 As with Susan Grace, there is no evidence that Opal purchased seeds or planted the marijuana, that she ever worked in the patches, or that she was in the area on any occasion other than at the time of her arrest. Her only activity was walking near the marijuana. Furthermore, there was absolutely no physical evidence connecting Opal with the marijuana. Like Susan Grace, this is a "mere presence" case. There is simply no evidence that Opal aided and abetted in the growing of the marijuana.
 
 
 19
 Because we conclude that there is insufficient evidence to support her conviction, we do not need to address the remaining issues that Opal raises on appeal.
 
 
 20
 Accordingly, the conviction of Opal Son is REVERSED. The charges against Opal Son are ordered dismissed.